FILED

2010 AUG 27   PM 2: 32

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CELL TOWER LITIGATION | CASE NO. 07cv399 BEN (WVG) [Consolidated with 08cv0435 BEN-WVG; 08cv0864 BEN-WVG; 09cv0439 BEN-WVG; 09cv0681 BEN-WVG; 09cv1879 BEN-WVG; 09cv1888 BEN-WVG]<br><br>**ORDER DENYING MOTIONS TO DISMISS**<br><br>[Dkt. Nos. 99, 101-103] |

## INTRODUCTION

Defendant City of San Diego has filed four motions to dismiss. Dkt. Nos. 99, 101-103. The City moves to dismiss numerous claims in Plaintiff American Tower Corporation's First Amended Complaint in case 09cv439, Plaintiff Crown Castle Company LLC's Complaint in case 09cv1879, Plaintiff Verizon Wireless, LLC's First Amended Complaint in case 09cv681, and Plaintiff New Cingular Wireless, LLC's ("AT&T") Complaint in case 09cv1888. ATC, Crown Castle, Verizon, and AT&T oppose the motions. For the reasons discussed below, the Court **DENIES** the City's motions.

///

///

## BACKGROUND

The following background is based on the allegations of the operative complaints.  ATC, Crown Castle, and Verizon own and operate telecommunications monopoles and associated buildings on sites in San Diego.  Telecommunications providers use or lease space on these monopoles to provide wireless services.  The Aviation, Mt. Ada, and 30th Place sites were constructed pursuant to conditional use permits ("CUP") issued in 1984 allowing the establishment of cellular communications facilities, including a monopole.  Crown Castle's Mission Gorge site was constructed pursuant to a CUP issued in 1994, also allowing the establishment of cellular communications facilities, including a monopole.

The Aviation, Mt. Ada, and 30th Place CUPs each contained a twenty year expiration date.  Each CUP specifically provided, "[t]his permit shall expire twenty years from the date of approval.  If an extension is requested, the operation and conditions shall be reviewed at pubic hearings by the Planning Commission and City Council."  The Mission Gorge CUP contained a ten-year expiration date and specifically provided that "[a]t the end of this period, the permittee [sic] may apply for a new Conditional Use Permit."  But, the City also repeatedly represented that the Mission Gorge facility could be maintained beyond the ten-year period and be renewed upon expiration.

As to each site, the owner or operator sought renewal of the CUP, or if required by the City, a new CUP.  The Aviation and Mission Gorge applications were deemed complete shortly after submission, but the City delayed decisions on the applications for years to obtain additional information, require development of alternative plans, and require additional local community group review.  Ultimately, all the CUPS were denied for failing to comply with the City's current requirements.

Plaintiffs allege that compliance with the City's current demands would require removal and replacement of the wireless facilities.  This would result in material lose of wireless services, gaps in service, require wireless providers to reconfigure their networks, and deprive the owners and operators of existing licenses, business investments, customers, and good will.

///

///

07cv399

1    Plaintiffs also allege that the City has approved permits for and granted extensions for

2  monopoles or monopole-like structures in the City under nearly identical circumstances while denying

3  Plaintiffs CUPs.  Additionally, the City maintains its own monopole located within 50 yards of the

4  Aviation site.  The design of the City's monopole is indistinguishable from Plaintiffs' monpole at the

5  Aviation site, however, the City does not impose the same restrictions on its own facility that it is

6  imposing on Plaintiffs.  The City leases use of its monopole for commercial purposes in direct

7  competition with Plaintiffs.

8                                    **DISCUSSION**

9    A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v.*

10  *Block*, 250 F.3d 729, 732 (9th Cir. 2001).  When considering a motion to dismiss, the Court must

11  accept the truth of all well-pleaded factual allegations, draw any reasonable inferences from those

12  allegations, and construe the complaint in the light most favorable to the plaintiff.  *Johnson v.*

13  *Riverside Healthcare Sys.*, 534 F.3d 1116, 1122 (9th Cir. 2008).  But, the Court is not required "to

14  accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

15  1949-50 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

16    Plaintiffs' claims must "raise a right to relief above the speculative level on the assumption that

17  all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.  "To

18  survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face."

19  *Iqbal*, 129 S. Ct. at 1949.  A claim is facially plausible when the allegations of the complaint allow

20  "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

21  *Id.*  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those

22  facts is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

23    Given the significant overlap in the claims the City challenges, the Court addresses the City's

24  motions collectively by claim for relief.

25  **I.     Unreasonable Discrimination**

26    The City moves to dismiss Plaintiffs' claims for unreasonable discrimination in violation of

27  47 U.S.C. § 332(c)(7)(B)(i).  The federal Telecommunications Act affirms local government zoning

28  authority "regarding placement, construction, and modification of personal wireless service facilities."

1   47 U.S.C. § 332(c)(7)(A).   But that authority is limited.   § 332(c)(7)(B).   Specifically, local

2   governments "shall not unreasonably discriminate among providers of functionally equivalent

3   services." § 332(c)(7)(B)(i).

4        Plaintiffs allege that the City's denial of CUPs to Plaintiffs, while the City continues to operate

5   and lease space to wireless providers on an equivalent monopole is unreasonable discrimination among

6   providers of functionally equivalent services.   Plaintiffs allege that the City, acting in it proprietary

7   capacity, leases space on a city-owned monopole, adjacent to the Aviation site in direct competition

8   with Plaintiffs.   The City's monopole is of the same design as the Aviation site and indistinguishable

9   in terms of visual impact from the Aviation site.   Plaintiffs also allege the City has approved permits

10   for monopoles or monopole-like structures in the City under nearly identical circumstances and

11   granted extensions of CUPs under the same requirements while refusing to grant CUP extensions and

12   denying Plaintiffs' CUPs.

13        The City argues Plaintiffs have failed to state a claim because Plaintiffs and the City are not

14   "providers of functionally equivalent services."   The City relies on its ability, under state law, to

15   exempt itself from land use regulations because the main function of its monopole is for emergency

16   communications by fire and police services.   The City's position, that ATC and the City are not

17   functionally equivalent because the City mainly uses its monopole for emergency services and only

18   incidentally for proprietary use, goes beyond the allegations of the FAC and disputes the truth of

19   Plaintiffs' allegations.   This is not appropriate on a motion to dismiss because at this point in the

20   proceedings, the Court must accept the truth of Plaintiffs' allegations and limit its review to these

21   allegations.

22        The City additionally argues that Plaintiffs have not demonstrated that the favorably treated

23   facilities are similarly situated to Plaintiffs or that the City's denial was unreasonable.   Plaintiffs have

24   alleged City approval under nearly identical circumstances to those presented by Plaintiffs.   Plaintiffs

25   are not required to prove every detail at the pleading stage, rather, Plaintiffs must only state a plausible

26   claim for relief.   *Iqbal*, 129 S. Ct. at 1949.   Because Plaintiffs have sufficiently alleged unreasonable

27   discrimination, the City's motions to dismiss Plaintiffs' unreasonable discrimination claims are

28   **DENIED**.

## II.     California Code of Civil Procedure § 1094.5

The City moves to dismiss Plaintiffs' claims under California Code of Civil Procedure § 1094.5 as redundant of and precluded by the remedies provided by federal law in § 332. The City argues that § 332's remedial scheme precludes any supplemental state law remedies for violation of the TCA. Plaintiffs argue that the TCA is not the exclusive remedy to challenge a wireless siting decision, but rather, it is just one of a number of legal remedies available to overturn denial of a CUP.

The TCA does not preempt state and local zoning laws. As previously noted, the statute specifically states that nothing within the Act limits local zoning authority except § 332(c)(7)(B). The statute itself does not preclude the pursuit of state law claims arising from similar wrongful conduct by the City that violates state law.

Additionally, in *Kay v. City of Rancho Palos Verdes*, the Ninth Circuit affirmed a district court decision granting a writ of mandate under California Code of Civil Procedure § 1094.5 in a case including claims under the TCA. 504 F.3d 803, 811 (9th Cir. 2007). The Court went through a detailed analysis of the availability of damages under § 1094.5 and ultimately found the Plaintiff had only established entitlement to the writ under § 1094.5. *Id.* at 809-11. The Court went on to analyze the availability of damages under the TCA. *Id.* at 811-15. While not directly analyzing the question presented here, the decision suggests that Plaintiffs can pursue claims under § 1094.5 in addition to claims under the TCA. The City's motions to dismiss ATC's and Crown Castle's § 1094.5 claims are **DENIED**.

## III.    Equal Protection

The City moves to dismiss ATC's, Crown Castle's, and AT&T's claims for violation of Equal Protection. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiffs allege the City is discriminating because it is approving permits for or granting extensions to nearly identical sites. Additionally, Plaintiffs allege the City is treating itself more favorably by using its monopole for commercial purposes and not subjecting itself to the same requirements.

///

///

- 5 -

1    The City argues, as it did in moving to dismiss the unreasonable discrimination claims, that

2    the City and Plaintiffs are not similarly situated because the City uses its monopoles mainly for

3    emergency services and only incidentally for commercial purposes. This argument again goes beyond

4    and disputes Plaintiffs' allegations. This argument does not warrant dismissal because the Court must

5    accept the truth of the allegations of the operative complaints and limit its review to those allegations.

6    Because Plaintiffs have sufficiently alleged violation of Equal Protection, the City's motions to dismiss

7    these claims are **DENIED**.

8    **IV.     Permit Streamlining Act**

9    The City moves to dismiss ATC's and Crown Castle's claims for violation of the Permit

10   Streamlining Act ("PSA"), California Government Code § 65956. ATC and Crown Castle allege the

11   City failed to approve or disapprove the applications within 60 days from the date the City determined

12   the project was exempt from the California Environmental Quality Act as required by § 65950(a)(4)

13   and public notice was given. The City argues that the public notices given do not comply with the

14   public notice requirements of the PSA, barring this claim.

15   Section 65956(b) provides that "the permit shall be deemed approved only if the public notice

16   required by law has occurred." The statute itself does not define "public notice required by law." The

17   statute goes on to outline numerous requirements "[i]f the *applicant* chooses to provide public notice,"

18   including the requirement at issue here, inclusion of language in the notice that the project will be

19   approved without action within 60 days. *Id.* (emphasis added).

20   The Court is presented with a divergence of authority on this point. The City argues that

21   because the public notices do not contain "a statement that the project shall be deemed approved if the

22   permitting agency has not acted within 60 days" the notices do not meet the statutory requirement for

23   public notice. The City relies on *Mahon v. County of San Mateo*, 139 Cal. App. 4th 812, 821-22 (1st

24   Dist. 2006). In *Mahon*, the California Court of Appeal analyzed this point in detail, including analysis

25   of the legislative history and public policy implications, and found that the requisite public notice must

26   include a warning that the project would be deemed approved. *Id.* at 817-24. The Court

27   acknowledged that the statute only specifically required this warning when the public notice was given

28   by the applicant, but also imposed it when public notice was given by the agency. *Id.* at 821-22.

07cv399

1    ATC and Crown Castle argue that *Mahon* is irrelevant because it is contrary to the California

2  Supreme Court's decision in *Bickel v. City of Piedmont.* 16 Cal. 4th 1040, 1046-47 (1997) *superceded*

3  *by statute as recognized in Riverwatch v. County of San Diego*, 76 Cal. App. 4th 1428, 1439 (4th Dist.

4  1999). The *Bickel* Court found the following, in a footnote:

5    Under section 65956, an applicant can compel an agency to give public notice of a
     development project or to hold a public hearing, or both, and the statute provides a
6    means for the applicant to give public notice. (§ 65956, subds.(a), (b).) *Because in*
     *this case the city gave public notice and held public hearings, these statutory*
7    *provisions are not in issue here.*

8  *Id.* at 1047 n.2. This language conflicts with *Mahon*, where the Court found the County's notices

9  insufficient because the notices did not comply with the requirements imposed on an applicant giving

10 notice. The *Mahon* Court did not distinguish or cite *Bickel*.

11    When applying state law, a federal court must apply the decisions of a state's highest court

12 "unless it has later given clear and persuasive indication that its pronouncement will be modified,

13 limited, or restricted." *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940). When the high

14 court has not addressed an issue, a federal court must look to the state's appellate court decisions,

15 "unless it is convinced by other persuasive data that the highest court of the state would decide

16 otherwise." *Id.* at 237.

17    The state's highest court has addressed this issue in *Bickel* and this Court must follow that

18 decision. While *Bickel* was superceded by statute, the superceding statute did not address this point.

19 And, even if the Court treated *Bickel* as dicta, it would still constitute persuasive data that the state's

20 highest court would decide the issue differently than its appellate court did in *Mahon*. The *Mahon*

21 decision, lacking any citation to or distinguishing of *Bickel*, is not sufficient to alter *Bickel*.

22    The Court only finds, based on the California Supreme Court's decision in *Bickel*, that ATC's

23 and Crown Castle's claims are not barred as a matter of law for failing to allege it met the *applicant*

24 public notice requirements. The Court need not and does not address at this time whether "the public

25 notice required by law has occurred." The City's motions to dismiss ATC's and Crown Castle's

26 claims for violation of the Permit Streamlining Act are **DENIED**.

27 ///

28 ///

07cv399

1   **V.    Dormant Commerce Clause**

2          The City moves to dismiss ATC's and Crown Castle's claims for violation of the Dormant

3   Commerce Clause. "The negative or dormant implication of the Commerce Clause prohibits state .

4   . . regulation . . . that discriminates against or unduly burdens interstate commerce and thereby impedes

5   free private trade in the national marketplace." *General Motors Corp. v. Tracy*, 519 U.S. 278, 287

6   (1997). In determining whether the dormant commerce clause has been violated, the Court considers

7   first, whether the regulation discriminates against interstate commerce and second, whether the

8   regulation imposes a burden "that is clearly excessive in relation to the putative local benefits." *C &*

9   *A Carbone, Inc. v. Clarkstown*, 511 U.S. 383, 390 (1994).

10          ATC and Crown Castle allege the City's wireless regulations discriminate against interstate

11   commerce because the City acts as a direct competitor in the market, but treats itself, locally owned

12   and operated, better that facilities owned by others. ATC and Crown Castle also allege that the City's

13   wireless regulations impose an undue burden on interstate commerce that is excessive in relation to

14   the local benefits derived from the City's more favorable treatment of itself compared to private

15   companies. The City argues its favorable treatment of the City, exemption from the regulations it has

16   imposed on ATC and Crown Castle, is allowable because the City is not in direct competition with

17   ATC or Crown Castle.

18          As previously discussed, on a motion to dismiss, the Court cannot consider factual disputes

19   raised by the City. The City's claims that it is not in direct competition with ATC or Crown Castle

20   and that it may treat itself more favorably because it uses its monopole mainly for emergency services

21   are factual disputes the Court cannot resolve on a motion to dismiss. Because ATC and Crown Castle

22   have sufficiently alleged violation of the Dormant Commerce Clause, the City's motions to dismiss

23   these claims are **DENIED**.

24   **VI.    Unlawful Barrier to Entry**

25          The City moves to dismiss Verizon's and AT&T's claims for unlawful barrier to entry under

26   47 U.S.C. § 253. Section 253(a) of the TCA prohibits any state or local regulation that "may prohibit

27   or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate

28   telecommunications service." In *Sprint Telephony PCS, L.P. v. County of San Diego*, the Ninth Circuit

1  found that to succeed on a § 253 claim, "a plaintiff must establish either an outright prohibition or an

2  effective prohibition on the provision of telecommunications services." 543 F.3d 571, 579 (9th Cir.

3  2008)(en banc) (overruling *City of Auburn v. Qwest Corp.*, 260 F.3d 1160 (9th Cir. 2001). While the

4  *Sprint* decision established a high burden for a plaintiff to succeed, it left open a challenge to a

5  regulation that would "effectively prohibit" the provision of wireless service, including a "significant

6  gap" in coverage. *Id.* at 580.

7        The City argues that the *Sprint* decision precludes Plaintiffs' unlawful barrier to entry claims

8  because Plaintiffs have not alleged an effective prohibition on wireless services. However, Plaintiffs

9  have pleaded that compliance with the City's demands will result in a significant gap in coverage

10  because it would eliminate "microwave backbone" and prevent Plaintiffs from offering current levels

11  of wireless service.

12        The *Sprint* decision provides two examples of when a § 253 claim might succeed: (1) a

13  requirement that all facilities be underground with plaintiff introducing evidence that its facilities do

14  not work underground and (2) a requirement that no facilities be located within a mile of any road with

15  plaintiff introducing evidence of the number of roads and their locations to show effective prohibition.

16  *Id.* These examples have the production of evidence in common, a stage Plaintiffs have not reached.

17        The *Sprint* decision leaves Plaintiffs with a very steep uphill battle, but it is not a battle the

18  Court can deny Plaintiffs the opportunity to fight. *Twombly*, 550 U.S. 556 ("a well-pleaded complaint

19  may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that

20  recovery is very remote and unlikely.").

21        The City's motions to dismiss Verizon's and AT&T's claims for unlawful barrier to entry are

22  **DENIED**.

23  **VII.   Statute of Limitations**

24        Through supplemental briefing, the City moves to dismiss all claims in the 09cv681 case based

25  on the 30th Place and Mt. Ada CUPs as barred by the 30-day statute of limitations imposed by the

26  TCA and the 90-day statute of limitations imposed by § 1094.6. The original Complaint in the

27  09cv681 case was filed on April 3, 2009, but the case was stayed. Shortly after this Court lifted the

28  stay, Verizon filed a First Amended Complaint adding the Mt. Ada and 30th Place claims.

The City agrees that both statutes of limitation were tolled until at least February 5, 2010 pursuant to a tolling agreement. By the time the agreement expired, Verizon could not file an amended complaint because the litigation was stayed. Verizon filed the FAC less than two weeks after the stay was lifted. Because Verizon was diligent in amending the complaint shortly after the stay was lifted and the statute of limitations was tolled by the tolling agreement and during the stay of the litigation, the City's motion to dismiss the 30th Place and Mt. Ada claims is **DENIED**.

## CONCLUSION

The City's motions to dismiss are **DENIED**. The City shall file Answers to the operative complaints within 10 days of the filing of this order.

**IT IS SO ORDERED.**

DATED: August *10*, 2010

Hon. Roger T. Benitez
United States District Court Judge

- 10 -

07cv399