# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

IN RE CELL TOWER LITIGATION

CASE NO. 07cv399 BEN (WVG)

**ORDER**:
- **GRANTING IN PART AND DENYING IN PART ATC'S MOTION FOR SUMMARY JUDGMENT**
- **GRANTING IN PART AND DENYING IN PART THE CITY'S MOTION FOR SUMMARY JUDGMENT**

[Dkt. Nos. 128–130]

**INTRODUCTION**

Plaintiff American Tower Corporation ("ATC") and Defendants City of San Diego, City Council of City of San Diego, and Development Services Department of City of San Diego ("the City") have filed cross motions for summary judgment in Case No. 07cv399 BEN (WVG). Dkt. Nos. 128, 130. The parties each seek summary judgment on certain claims concerning the denial of a conditional use permit ("CUP") for a wireless communications facility located at 2222 Versus Street ("Versus").[1] For the reasons discussed below, the Court grants in part and denies in part both motions for summary judgment.

---

[1] The parties' cross motions for summary judgment addressed both the Versus site and an additional site, the Federal site, but ATC's claims regarding the Federal site have since been dismissed. Dkt. No. 213.

**BACKGROUND**

ATC owns a 90-foot telecommunications tower and associated building at the Versus site in San Diego. Telecommunications providers use or lease space on the tower to wireless services providers. The previous CUP for the Versus site was issued in 1995 for a period of ten years. The Versus CUP did not provide for extensions or renewal. The CUP specifically required all activity at the site cease and the site be returned to its original condition upon expiration if a new CUP was not approved for the site.

ATC's new CUP application for the Versus site sought to maintain the site with its existing height and design despite City regulations that require such facilities be designed to be minimally invasive through design, use of architecture, landscape architecture, and siting solutions. Throughout the various stages of the proceeding before the City, ATC refused to make any concessions with regard to the height or design of the tower and refused to provide any site-specific analysis of the impact on wireless coverage from lowering the tower. However, ATC did make an untimely offer with regard to landscaping at the site.

Eventually, following a lengthy extension of time by the agreement of the parties, the Hearing Officer denied the application because the tower failed to comply with the regulations. ATC appealed to the Planning Commission, and the Planning Commission upheld the Hearing Officer's decision.

**DISCUSSION**

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party meets this burden, the burden then shifts to the opposing party to set forth specific facts showing that a genuine issue remains for trial. *Id.* "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting FED. R. OF CIV. P. 1)).

///

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. Evidence raises a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 252. "[W]hen parties submit cross motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "A 'justifiable inference' is not necessarily the most likely inference or the most persuasive inference. Rather, 'an inference as to another material fact may be drawn in favor of the nonmoving party . . . if it is rational or reasonable.'" *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (quoting *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987)).

**I.     Telecommunication Act ("TCA")**

    **A.     47 U.S.C. § 332**

ATC moves for summary judgment on its three claims under 47 U.S.C. § 332(c)(7): unreasonable discrimination, effective prohibition, and lack of substantial evidence.[2] The

---

[2] (A) General authority
Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
(B) Limitations
(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—
(I) shall not unreasonably discriminate among providers of functionally equivalent services; and
(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless

Telecommunications Act affirms local government zoning authority "regarding placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A). But that authority is limited. § 332(c)(7)(B). Specifically, local governments: "shall not unreasonably discriminate among providers of functionally equivalent services," § 332(c)(7)(B)(i)(I); "shall not prohibit or have the effect of prohibiting the provision of personal wireless services," § 332(c)(7)(B)(i)(II); and any decision by a local government to deny a request for a personal wireless service facility must be supported by substantial evidence, § 332(c)(7)(B)(iii).

### 1. Substantial Evidence[3]

ATC argues that the City's denial of its application for a CUP for the Versus site was not supported by substantial evidence. "[T]he substantial evidence inquiry does not require incorporation of the substantive federal standards imposed by the TCA, but instead requires a determination whether the zoning decision at issue is supported by substantial evidence in the context of applicable *state and local law*." *MetroPCS, Inc. v. City and Cnty. of S.F.*, 400 F.3d 715, 723–24 (9th Cir. 2005) (emphasis in original). The substantial evidence review is "deferential." *Id.* at 725. The Court may not "engage in [its] own fact-finding nor supplant the [City's] reasonable determinations." *Id.* "The upshot is simple: this Court may not overturn the [City's] decision on 'substantial evidence' grounds if that decision is authorized and supported by a reasonable amount of evidence (i.e., more than a 'scintilla' but not necessarily a preponderance)." *Id.*

San Diego Municipal Code § 141.0405 regulates communications towers like the Versus site. The City appropriately considered the 90-foot tower and equipment shelter a major communications facility and evaluated the CUP under those requirements. In addition to other requirements, "[m]ajor telecommunications facilities shall be designed to be minimally invasive through the use of

---

services.
. . .
(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.
47 U.S.C. § 332(c)(7)

[3]The Court considers ATC's substantial evidence claim first because, if a city's "decision fails that test it, of course, is invalid even before the application of the TCA's federal standards." *T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 993 (9th Cir. 2009).

architecture, landscape architecture, and siting solutions, . . . us[ing] the smallest and least visually intrusive antennas and components that meet the requirements of the facility." S.D.M.C. § 141.0405. Accordingly, the regulations authorize the City to consider the visual impact of the tower, including whether the applicant has used design, architecture, and landscape architecture to minimize its intrusion.

In opposing ATC's motion for summary judgment on this claim, the City cites generally to the Reports to the Hearing Officer, the Resolutions of the Hearing Officer, and the Reports to the Planning Commission.[4] The City found that the tower was the tallest structure in and around the area, resulting in an incongruous effect on the community landscape and that it posed an unsightly visual impact for commuters because it is situated prominently along a major transportation corridor, I-5. The regulations authorize the City's consideration of these facts in denial because the City is charged with requiring designs that are minimally invasive.

Additionally, it is clear throughout the record that ATC's consistent refusal to modify the proposal to minimize its visibility, including refusal to reduce the height by even the 23 feet of unused tower, weighed against approval of the CUP. This evidence also supports the City's denial because the regulations require designs that are minimally invasive. Reviewing the record deferentially, as the Court must, the Court finds that the City's decision was supported by more than a scintilla of evidence. Accordingly, ATC is not entitled to summary judgment on its substantial evidence claim under § 332(c)(7)(B)(iii).

## 2. Unreasonable Discrimination

ATC argues that the City's denial of its application for a CUP for the Versus site constitutes unreasonable discrimination. The TCA prohibits "regulation of the placement, construction, and modification of personal wireless service facilities . . . [that] unreasonably discriminate[s] among providers of functionally equivalent services." § 332(c)(7)(B)(i)(I). The only provider ATC claims

---

[4]The Court notes that these general citations to the record are likely the result of the overall lack of specificity concerning the problems with the site. However, as identified by the Court, there is sufficient evidence in the record to support the City's denial of the CUP. *See Metro PCS*, 400 F.3d at 726 (finding substantial evidence supporting a decision despite a lack of thoroughness or rigor on a particular issue).

that the City is differentially treating is the City. To succeed on its unreasonable discrimination claim, ATC must prove that ATC and the City are *functionally equivalent providers* and that the City is *unreasonably discriminating* between the City and ATC. *Id.* (emphasis added).

The parties do not dispute that the City has two towers that are relatively comparable to the Verus tower in terms of size and that the City does not impose its regulations on its own towers. ATC argues that the City's imposition of regulations on ATC that it does not impose upon itself gives the City an unfair competitive advantage against ATC. The City counters that it does not market or advertise its towers in competition with ATC, primarily uses its towers for emergency communications and the general business of the City, and is lawfully exempt from its own land use regulations. The City admits it generates approximately $50,000 from leases to commercial carriers, but this revenue is in sharp contrast to ATC's state rental earnings in excess of one million dollars. ATC counters that the City actually generates approximately $100,000 more from *public* entities co-located on the City's towers.

Here, ATC and the City are not functionally equivalent providers. While the evidence presented by the parties does not provide the most comparable information for comparison, it is clear that the City's towers are used primarily for City services, including emergency services. Its minimal leases to other providers, predominately public entities, on these two towers are not comparable to ATC's tower being used entirely for commercial gain with substantially greater revenue. In reaching this conclusion, the Court is mindful that the City's use of its towers could certainly reach a point where it is more equivalent to ATC, and ATC's concerns that the City is tipping the scales in its favor as a direct competitor might have more traction. Based on the evidence provided, however, ATC and the City are not functionally equivalent providers. Accordingly, ATC is not entitled to summary judgment on its unreasonable discrimination claim under § 332(c)(7)(B)(i)(I).

### 3. Effective Prohibition

ATC argues that the City's denial of its application for a CUP for the Versus site constitutes effective prohibition. Under the TCA, local government's regulation of personal wireless facilities cannot "prohibit or have the effect of prohibiting the provision of personal wireless services." § 332(c)(7)(B)(i)(II). "[A] locality can run afoul of the TCA's 'effective prohibition' clause if it

1  prevents a wireless provider from closing a 'significant gap' in service coverage." *MetroPCS*, 400
2  F.3d at 731.  To succeed, ATC must demonstrate a significant gap in service and that the way "it
3  proposes to fill the significant gap in services is *the least intrusive on the values that the denial sought*
4  *to serve*." *T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 995 (9th Cir. 2009) (emphasis in
5  original) (quoting *MetroPCS*, 400 F.3d at 734).

6        Because the Court finds that ATC did not demonstrate that its proposal was the least intrusive
7  means of filling a significant gap in service, assuming there even was a significant gap in service,[5]
8  ATC's effective prohibition claim cannot succeed.  It is ATC's burden to show that its proposal —
9  the existing tower without any reduction in height or alteration in design — was the least intrusive
10 means of closing a significant gap in coverage.  *MetroPCS*, 400 F.3d at 734.  This means that ATC
11 "has the burden of showing the lack of available and technologically feasible alternatives." *T-Mobile*,
12 572 F.3d at 996 (citing *SprintTelephony PCS, L.P. v. Cnty. of San Diego*, 543 F.3d 571, 579 (9th Cir.
13 2008) (en banc) ("*Sprint II*")).  This standard is intended to "allow for *meaningful comparison of*
14 *alternative sites before the siting application process is needlessly repeated*.  It also gives the
15 providers an incentive to choose the least intrusive site in their first siting applications, and it promises
16 to ultimately identify the best solution for the community, not merely the last one remaining after a
17 series of application denials." *Id.* at 995 (emphasis added).

18       It is clear from the record in this case that ATC refused to make any concession with regard
19 to the design or height of its tower and made only minor concession with regard to landscaping.
20 Throughout the proceedings, despite repeated requests from the City for alternatives and information
21 about coverage gaps with regard to the specific site, ATC refused to provide any re-design options,
22 any analysis of service gaps specific to the Versus site, or any alternative to the existing tower.  ATC
23 essentially told the City that keeping its tower exactly the same, without any alteration to height or

---

[5]The Court notes that the significant gap analysis is particularly challenging in this case because what exactly constitutes a significant coverage gap for a tower manager, like ATC, rather than a wireless services provider, like those that lease space from ATC, is not clear in the case law.  The significant gap analysis considers whether "a provider is prevented from filling a significant gap in its *own* service coverage." *MetroPCS*, 400 F.3d at 733 (emphasis in original).  Additionally, the "significant gap determination [is an] extremely fact-specific inquir[y] that def[ies] any bright-line legal rule." *Id.*

design to bring it into greater compliance with the City's regulations, was the best option, without offering any analysis of alternatives.

The facts of this case are drastically different from those of *T-Mobile, USA, Inc. v. City of Anacortes*, where a provider submitted analysis of eighteen alternative sites. 572 F.3d at 995. Here, ATC did not show a "a good faith effort [had] been made to identify and evaluate less intrusive alternatives, *e.g.*, that the provider has considered . . . alternative system designs, alternative tower designs, placement of antennae on existing structures, etc." *Id.* at 996 n.10 (quoting with approval *APT Pittsburgh Ltd. P'ship v. Penn Twp. Butler Cnty.*, 196 F.3d 469, 480 (3d Cir. 1999). ATC did not offer any analysis of any alternatives, even analysis of reducing the existing tower by the 23 feet that was going unused without any resulting significant gap in service. ATC failed to meet its burden to show that its proposal was the least intrusive means of filling a significant coverage gap, assuming there was a coverage gap. Accordingly, ATC is not entitled to summary judgment on its §332(c)(7)(B)(i)(II) claim.

### B.  47 U.S.C § 253

The City moves for summary judgment on ATC's § 253 effective prohibition claim. As ATC notes, the statutory language addressing effective prohibition is the same in § 332 and § 253. "[T]he legal standard is the same under either." *Sprint II*, 543 F.3d at 579 (declining to decide whether a claim fell under § 253 or § 332 because the same standard applied under both). As discussed above, ATC cannot establish effective prohibition. Accordingly, the City is entitled to summary judgment on ATC's § 253 claim.

## II.  Dormant Commerce Clause

ATC and the City move for summary judgment on ATC's dormant commerce clause claim. "The negative or dormant implication of the Commerce Clause prohibits state . . . regulation . . . that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in the national marketplace." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997). In determining whether the dormant commerce clause has been violated, the Court must apply a two-tiered approach. *S.D. Meyers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 466 (9th Cir. 2001). First, the Court considers whether the regulation directly discriminates against interstate commerce. *Id.* If it

1  does, it will generally be struck down. *Id.* Second, if the regulation only indirectly affects interstate
2  commerce and regulates evenhandedly, the Court must determine whether the regulation imposes a
3  burden "that is clearly excessive in relation to the putative local benefits." *C&A Carbone, Inc. v.*
4  *Clarkstown*, 511 U.S. 383, 390 (1994); *Id.* (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142
5  (1970)).

6        ATC agrees that the first tier does not apply to this case. However, ATC argues that the
7  regulations are excessive in relation to the local benefits because the City imposes the regulations on
8  ATC's towers, but does not impose the regulations upon its own towers. Essentially, ATC's claim
9  is based on the City's exemption of the City from zoning regulations. ATC cites no cases where the
10 dormant commerce clause has been extended to a similar situation and as previously discussed, ATC
11 and the City are not similar, making comparison for purposes of the Commerce Clause unwise. *See*
12 *Gen. Motors Corp.*, 519 U.S. at 298 ("Conceptually, of course, any notion of discrimination assumes
13 a comparison of substantially similar entities").

14       While the Court is mindful of ATC's speculation that the City could, theoretically, directly
15 compete in the wireless market and regulate the market to the City's benefit, there is no basis in the
16 evidence for that speculation and the regulations do not require that result. The City is imposing
17 zoning regulations on all wireless providers that require minimizing the intrusiveness of wireless sites.
18 It simply requires providers to submit proposals that are minimally invasive on the community. Such
19 an even-handed regulation will not violate the commerce clause unless its burdens "so outweigh the
20 putative benefits as to make the statute *unreasonable or irrational*." *Alaska Airlines, Inc. v. City of*
21 *Long Beach*, 951 F.2d 977, 983 (1991) (emphasis added). ATC has not established that the
22 regulations themselves are unreasonable or irrational or even that the City's exemption of itself, a
23 markedly different entity, from those regulations is unreasonable or irrational. Accordingly, the City
24 is entitled to summary judgment on ATC's dormant commerce clause claim.

25 **III.    Fifth Amendment Taking**

26       The City moves for summary judgment on ATC's claim that imposition of the City regulations
27 constitutes an impermissible regulatory taking under the Fifth Amendment. The City argues that
28 ATC's claim cannot survive because ATC has not sought and been denied just compensation.

A regulatory takings claim, like that asserted in ATC's First Amended Complaint ("FAC") is not ripe until the aggrieved party has sought compensation through State procedures. *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985). "The Fifth Amendment does not proscribe the taking of property; it proscribes the taking without just compensation." *Id.* (quoting *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 297 n.40 (1981)).

ATC now argues on summary judgment that it is not required to follow state compensation procedures because it is not alleging a regulatory taking, but rather a private taking, *i.e.*, the City took the property by denying the permit to further its monopoly of the tower market in San Diego. ATC cites *Armendariz v. Penman*, as support for this conclusion. 75 F.3d 1311, 1320–21 n.5 (9th Cir. 1996) (en banc) *overruled on other grounds as stated in Crown Point Dev. Inc. v. City of Sun Valley*, 506 F.3d 851, 852–53 (9th Cir. 2007). But, *Armendariz v. Penman* involved allegations that a city was enforcing housing codes in an effort to force out existing owners in order to allow a private commercial developer to acquire the property, *id.* at 1314–15. In addition, footnote 5 only acknowledges that if the government takes personal property for private use, the aggrieved does not have to follow state compensation procedures. *Id.* at 1320–21 n.5.

Here, ATC has not provided evidence, or even allegations, that the City took its property for private use. ATC speculates that the City could corner the market for tall towers in San Diego, but has not provided evidence it has done so or intends to do so. Additionally, ATC has not cited any authority suggesting that such conduct would constitute a private taking when the regulatory effect is not for private use. Accordingly, ATC's regulatory taking claim under the Fifth Amendment cannot succeed because ATC has not followed the requisite procedures to obtain compensation. The City is entitled to summary judgment on ATC's Fifth Amendment claim.

**IV.    Fundamental Vested Right (California Code of Civil Procedure § 1094.5)**

ATC moves for summary judgment on its fundamental vested rights claim under California Code of Civil Procedure § 1094.5. ATC claims it has a fundamental vested right to the continued use of its Versus tower without alteration despite an explicit expiration date in the CUP.

///

///

"The grant or denial of a conditional use permit is an administrative or quasi-judicial act. Judicial review must be in accordance with [California] Code of Civil Procedure 1094.5." *Goat Hill Tavern v. City of Costa Mesa*, 6 Cal. App. 4th 1519, 1525 (4th Dist. 1992) (internal citation omitted). "If an administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence." *Id.* "If the decision does not substantially affect a fundamental vested right, the trial court considers only whether the findings are supported by substantial evidence in light of the whole record." *Id.*

The Court determines if a decision impacts a fundamental vested right on a case-by-case basis, with courts giving less weight to "preservation of purely economic interests." *Id.* at 1526. "The courts have rarely upheld the application of the independent judgment test [*i.e.* a fundamental vested right, with regard] to land use decisions." *Id.* at 1527.

ATC does not have a fundamental vested right to continued use of the Versus site without alteration because the CUP approving the construction of the tower contained an explicit expiration date and the denial of the permit primarily implicates a purely economic interest.

The CUP states,

> This Conditional Use Permit will expire ten years from the effective date of the approved permit, unless a new application for a Conditional Use Permit is submitted to the Development Services Department, DEP Division, 90 days in advance of the expiration date as stated herein:
> a. Should the new permit application be denied by the Development Services Department Director/Planning Commission, this permit will automatically expire 90 days from the date of action by the approving authority; and
> b. The permittee shall cease and desist all activity on the site within 90 days from the date of action by the approving authority.
> c. The permittee shall return the site to its original condition within 90 days from the date of action by the approving authority.

ATC cites only one case, *Goat Hill Tavern v. City of Costa Mesa*, in which a California court has found a fundamental vested right despite an expiration date in the CUP. *Goat Hill Tavern*, 6 Cal App. 4th at 1529. However, the facts of that case were very unique, as the court itself acknowledged. *Id.* (affirming lower court on the "unique facts" of the case). *Goat Hill Tavern* involved a CUP issued to a 35-year business. *Id.* The CUP was only necessary to accommodate an expansion, but it expired only six months later. *Id.* The permit was issued with the understanding that it would be renewed.

*Id.* at 1529; *Metro. Outdoor Adver. Corp. v. City of Santa Ana*, 23 Cal. App. 4th 1401, 1404 (4th Dist. 1994). The Court even noted that is was "utterly implausible that Ziermer knowingly gave up all rights to continue operating Goat Hill Tavern in exchange for the opportunity to keep his game room expansion open for six months." *Goat Hill Tavern*, 6 Cal App. 4th at 1529 n.4.

In sharp contrast, ATC's predecessor[6] obtained a 10-year CUP that explicitly required ceasing all activity at the site and returning the site to its original condition ten years after the permit was issued if a new permit application was not timely submitted 90 days prior to expiration and ultimately approved. ATC's facts are more akin to the numerous case distinguished in *Goat Hill Tavern* involving purely economic interests. *Id.* at 1527–29; *San Marcos Mobilehome Park Owners' Ass'n v. City of San Marcos*, 192 Cal. App. 3d 1492 (4th Dist. 1987) (denying rent increase in rent-controlled building); *Mobile Oil Corp. v. Superior Court*, 59 Cal. App. 3d 293 (4th Dist. 1976) (requiring installation of vapor recovery systems at gas stations); *Standard Oil v. Feldstein*, 105 Cal. App. 3d 590 (1st Dist. 1980) (forcing shut down of new refinery as required by explicit language of permit). As with each of these cases, ATC might incur some expense or loss of business if it reduced its tower or redesigned it to achieve greater compliance with the City regulations, but this loss is purely economic.

The most factually analogous case is *Metropolitan Outdoor Advertising Corp. v. City of Santa Ana*. 23 Cal. App. 4th at 1403–04. Metropolitan obtained a CUP for a billboard. *Id.* Like ATC's CUP, it contained an expiration date and language requiring that the site be returned to its original condition upon expiration. *Id.* at 1403. The *Metropolitan* court found no fundamental vested right to continued use and maintenance of the billboard. Like Metropolitan, ATC "agreed to be bound by all [the CUP's] provisions," including ceasing use of the site upon expiration of the CUP. *Id.* at 1404.

ATC does not have a fundamental vested right to continued use of the Versus site, and as discussed above, substantial evidence in the record supports the City's decision. Accordingly, the City is entitled to summary judgment on ATC's fundamental vested rights claim.

---

[6] ATC does not dispute that the CUP runs with the land regardless of a change in ownership.

## V. Permit Streamlining Act

ATC and the City move for summary judgment on ATC's Permit Streamlining Act claim. ATC argues that the City violated the time limits of the Permit Streamlining Act and that ATC's CUP application for Versus must be approved as a matter of law. The City argues (1) that this claim is precluded because it was not pled in the FAC; (2) that the public notice required by law was not given; (3) that ATC did not exhaust its administrative remedies on this claim; and (4) that there was no violation of the time limits of the Permit Streamlining Act because ATC agreed to an extension.

Under California Government Code § 65950(a)(4), a public agency is required to "approve or disapprove the project . . . (4) Sixty days from the determination by the lead agency that the project is exempt from the California Environment Quality Act." And, "[i]n the event that a lead agency or a responsible agency fails to act to approve or to disapprove a development project within the time limits required by this article, the failure to act *shall be deemed approval* of the permit application for the development project." § 65956(b) (emphasis added). However, "the permit shall be deemed approved only if the public notice required by law has occurred." *Id.* The City does not dispute that it did not grant or deny ATC's CUP for the Versus site within sixty day after the project was found exempt from CEQA, leaving the Court to determine whether ATC's claim is precluded because: (1) ATC failed to plead this basis for its PSA claim; (2) the City's public notice was not sufficient; (3) ATC failed to exhaust administrative remedies; or (4) the parties agreed to extend the time for approval or denial of the Versus application.

### A. Pleading

ATC did not plead this particular basis for its PSA claim. The language of the FAC gives the City notice of a claim based on the application being "deemed complete" rather than being "deemed approved" as ATC now argues. It is a completely different basis for the claim, but it is the basis both parties argued in prior motions for summary judgment.[7] The City cannot now claim, more than two years later, that it did not have notice of this claim or that it is somehow prejudiced by ATC's delay

---

[7] In briefing the prior motions for summary judgment, the City did not claim that it failed to receive notice of the "deemed approved" claim, but instead argued only that ATC had not given the public notice required by law.

in amending.[8] The City does not identify any specific prejudice it will suffer from allowing amendment of the pleading.

A complaint may be amended when there is "no undue delay, bad faith, futility of amendment, or prejudice to the opposing party." *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1446 (9th Cir. 1990). While the parties and the Court would have been better served by a separate motion for leave to amend filed immediately after the Court lifted the stay of this action, the delay in addressing the pleading deficiency was brief and not in bad faith, the amendment is not futile, and the City is not prejudiced by the delay because it received notice of ATC's intention to pursue this claim long before the present motions for summary judgment were filed. Additionally, the Court may grant leave to amend based on a request in opposition to a motion for summary judgment. *Id.* n.2. Federal Rule of Civil Procedure 15(b) provides further support for this approach because it allows amendment of the pleadings to conform to the evidence at trial, assuming there is no prejudice to the opposing party, and allows amendment of the pleadings, even after judgment, if the parties have tried an issue by express or implied consent. The Court considers the FAC amended to reflect ATC's "deemed approved" PSA claim.

**B.     Public Notice**

Section 65956(b) provides that if an agency fails "to approve or disapprove a development project within the time limits required by the article, the failure to act shall be deemed approval of the permit application for the development project. However, the permit shall be deemed approved only if the public notice required by law has occurred." The City argues that the public notice required by law was not given because the City's public notice did not state that the project would be approved without action within 60 days. The Court previously addressed and ruled on this legal issue when deciding three prior motions to dismiss in the consolidated cases.

As explained in the Court's prior decision, the statute itself does not define the "public notice required by law" when the notice is given by the public entity. The statute goes on to outline

---

[8]While these consolidated cases were stayed for a lengthy period of time, the parties and the Court would have been better served by a formal motion to amend prior to the filing of new motions for summary judgment.

numerous requirements "[i]f the *applicant* chooses to provide public notice," including the requirement at issue here, inclusion of language in the notice that the project will be approved without action within 60 days. *Id.* (emphasis added).

The Court is presented with a divergence of authority on this point with the City relying on a California Court of Appeals decision and ATC relying on a California Supreme Court opinion. The City argues that because the public notices do not contain "a statement that the project shall be deemed approved if the permitting agency has not acted within 60 days" the notices do not meet the statutory requirement for public notice. The City relies on *Mahon v. Cnty. of San Mateo*, 139 Cal. App. 4th 812, 821–22 (1st Dist. 2006). In *Mahon*, the California Court of Appeal analyzed this point in detail, and found that the requisite public notice must include a warning that the project would be deemed approved. *Id.* at 817–24. The *Mahon* Court acknowledged that the statute only required this warning when the public notice was given by the applicant, rather than by the public entity, but decided to impose it when public notice was given by the public entity as well. *Id.* at 821–22.

ATC argues that *Mahon* is irrelevant because it is contrary to the California Supreme Court's decision in *Bickel v. City of Piedmont*, 16 Cal. 4th 1040, 1046–47 (1997) *superceded by statute as recognized in Riverwatch v. Cnty. of San Diego*, 76 Cal. App. 4th 1428, 1439 (4th Dist. 1999). The *Bickel* Court found the following, in a footnote:

> Under section 65956, an applicant can compel an agency to give public notice of a development project or to hold a public hearing, or both, and the statute provides a means for the applicant to give public notice. (§ 65956, subds.(a), (b).) *Because in this case the city gave public notice and held public hearings, these statutory provisions are not in issue here.*

*Id.* at 1047 n.2. While certainly not as extensive as the *Mahon* decision, this language reflects that the means for an applicant to give notice do not apply when the public entity gives public notice, as the City did here, and holds public hearings, as the City did here. This language conflicts with *Mahon*, where the court found the County's notices insufficient because the notices did not comply with the requirements imposed on an *applicant* giving notice. The *Mahon* Court did not distinguish or cite *Bickel*.

///

///

When applying state law, a federal court must apply the decisions of a state's highest court "unless it has later given clear and persuasive indication that its pronouncement will be modified, limited, or restricted." *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940). When the high court has not addressed an issue, a federal court must look to the state's appellate court decisions, "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* at 237.

The state's highest court has addressed this issue in *Bickel,* and this Court must follow that decision. While *Bickel* was superceded by statute, the superceding statute did not address this point. In addition, even if the Court treated *Bickel* as dicta, it would still constitute persuasive data that the state's highest court would decide the issue differently than its appellate court did in *Mahon*. The *Mahon* decision, lacking any citation to or distinguishing of *Bickel*, is not sufficient to alter *Bickel*. ATC was not required to meet the applicant notice requirements, *i.e.*, that the project would be deemed approved if the agency failed to act within 60 days.

### C.     Exhaustion of Administrative Remedies

The City argues that ATC cannot assert a PSA claim because it failed to exhaust its administrative remedies on this claim. ATC argues in opposition that there are no available means for administrative review for a violation of the PSA.

The Court agrees that an aggrieved party must "exhaust[] all *available means* of administrative review" before seeking judicial review. *Grant v. Superior Court*, 80 Cal. App. 3d 606, 609 (2nd Dist. 1978) (emphasis added). However, the cases cited by the City are distinguishable because in each of those cases, administrative review was available pursuant to the relevant statute. *Abelleira v. Dist. Court of Appeal*, 17 Cal. 2d 280, 291 (1941) (Unemployment Insurance Act "contains a complete administrative procedure with provisions for one original determination and two appeals"); *Sierra Club v. City of Orange*, 163 Cal. App. 4th 523, 535–36 (4th Dist. 2008) (CEQA); *Mani Bros. Real Estate Grp. v. City of Los Angeles*, 153 Cal. App. 4th 1385, (2nd Dist. 2007) (CEQA statutory scheme required aggrieved parties to object in writing or orally); *Coal. for Student Action v. City of Fullerton*, 153 Cal. App. 3d 1194, 1196–97 (4th Dist. 1984) (CEQA); *Leimert Co. v. Cal. Coastal Comm'n*, 149 Cal. App. 3d 222, 232 (5th Dist. 1983) (Public Resources Code provided for appeal to the California

Coastal Commission); *Grant*, 80 Cal. App. 3d at 609 (Public Resources Code provided for appeal to state commission).

The doctrine of exhaustion of administrative remedies requires "that where an administrative remedy *is provided by statute*, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Abelleira*, 17 Cal. 2d at 292 (emphasis added). Additionally, "[t]here are exceptions to the exhaustion doctrine," including "when the administrative remedy is unavailable." *McAllister v. Cnty. of Monterey*, 147 Cal. App. 4th 253, 275 (6th Dist. 2007).

The City does not cite and the Court is not aware of any authority requiring exhaustion of an administrative remedy that does not exist. Notably absent from the City's brief is any case law requiring exhaustion of a PSA claim before the administrative body that failed to comply with the PSA. Additionally, the PSA does not contain any administrative remedies with regard to the deemed approved provision. The Court simply cannot dismiss a claim for failure to exhaust administrative remedies when there are not administrative remedies to exhaust.

**D.     Extension of Time**

The City argues that ATC's claim is precluded because ATC agreed to extend the time to approve or deny the application. The City, relying on § 65950(b), argues that the PSA allows for extensions of time. While it does, the City ignores the limitations on those extensions. Section 65950(b) states, "[t]his section does not preclude a project applicant and a public agency from mutually agreeing in writing to an extension of any time limit provided by this section pursuant to Section 65957." Section 65957 only allows one extension "upon mutual written agreement" of the parties "for a period not to exceed 90 days from the date of the extension."[9]

The City relies on testimony by Robert Jystad before the hearing officer, in which he acknowledges an agreement in March 2006 to extend the time for a decision to June 1, 2007. This agreement did not comply with the requirements of the PSA in two respects. First, it is not in writing. Sections 65950(b) and 65957 require a written agreement to any extension. Second, even if the agreement were in writing, the limited 90-day extension in March 2006 would only extend the time

---

[9]The statute goes on to prohibit any other extensions, continuances, or waivers and cautions that failure to comply with the time limits may result in the project being deemed approved. § 65957.

- 17 -                                                       07cv399

for a decision to approximately June 2006, months before any action was taken on ATC's Versus application.

While the Court is troubled by ATC exploiting this provision despite agreement to a lengthy extension, one of the purposes of the PSA is "to expedite decisions" on development projects. § 65921; *Bickel*, 16 Cal. 4th at 1047 (noting that the time limits imposed by § 65956 and the limited extension available under § 65957 are intended to expedite decisions on development projects). ATC's Versus application was not approved within the time limits prescribed by the PSA and accordingly must be deemed approved. ATC is entitled to summary judgment on its PSA claim.

**VI.     California Business and Professions Code § 17200**

The City moves for summary judgment on ATC's unfair competition law ("UCL") claim. The City argues: (1) that the City is not a person amenable to suit under the UCL; (2) the City is statutorily immune from suit; (3) any claim under the UCL is preempted by the TCA; and (4) any claim for monetary damages is prohibited based on a failure to file a Government claim. ATC addressed only the first basis, arguing that the City is a corporation amenable to suit, and failed to address the remaining three arguments.

A UCL claim under § 17200 may only be brought against a "person" as defined in § 17201. Section 17201 defines a person as "natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." The City, as a public entity, is not a person under § 17201.

"[T]he definition of the term 'person' in [§ 17201 does] not include public entities, and . . . the UCL [does] not otherwise evidence any intent to impose governmental liability." *People for the Ethical Treatment of Animals v. Cal. Milk Producers Advisory Bd.*, 125 Cal. App. 4th 871, 878–79 (1st Dist. 2005) (summarizing cases). The plain language of the statute lacks "any references to governmental agencies or political entities" and if the legislature had intended to include a municipal corporation, like the City, it could have included it, as it specifically did in the preceding sections of the Unfair Trade Practices Act, § 17000 *et seq. Id.* at 879 (discussing the § 17021 definition of a person and its inclusion of "municipal or other public corporation"). "California courts have uniformly found that governmental agencies were not within the . . . definition of 'person' in Section

17201." *Cnty. of Santa Clara v. Astra U.S., Inc.*, 428 F. Supp. 2d 1029, 1034 (N.D. Cal. 2006) (summarizing cases). Because the City is not a person under § 17201, the City is entitled to summary judgment on ATC's UCL claim.

**VII.  California Code of Civil Procedure § 1085**

The City moves for summary judgment on ATC's § 1085 claim. ATC indicates that it no longer seeks this relief in this action. The City is entitled to summary judgment on this claim.

## CONCLUSION

ATC's motion for summary judgment is **GRANTED in part and DENIED in part** as discussed above and the City's motion for summary judgment is **GRANTED in part and DENIED in part** as discussed above. Additionally, ATC having filed redacted versions of the Leslie Vartanian, Aaron Feduk, and William Tifft declarations on the public docket and pursuant to the protective order issued in this case, ATC's motion to file the unredacted versions of the above declarations under seal is **GRANTED**.

**IT IS SO ORDERED.**

DATED: August 5, 2011

_____
Hon. Roger T. Benitez
United States District Judge