1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

10

## SOUTHERN DISTRICT OF CALIFORNIA

11
12

CASE NO. 07cv399 BEN (WVG)

13

IN RE CELL TOWER LITIGATION

**ORDER GRANTING THE CITY'S
SUCCESSIVE MOTION FOR
SUMMARY JUDGMENT**

14
15

[Dkt. No. 276]

16
17
18
19

## INTRODUCTION

20        On August 5, 2011, the Court issued a decision on the parties' cross-motions for summary

21 judgment in  Case No. 07cv399 BEN (WVG).  (Dkt. No. 267.)  The Court's decision disposed of all

22 claims except for three claims under the Telecommunications Act ("TCA") — Claims V, VI, and VII

23 — because the City did not move for summary judgment on those three claims.  For the reasons

24 discussed below, the Court **GRANTS** the City's successive motion for summary judgment.

25

## BACKGROUND

26        The relevant background is outlined in the Court's August 5, 2011 decision.

27 ///

28 ///

**DISCUSSION**

"[D]istrict courts have discretion to entertain successive motions for summary judgment." *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010). "[A]llowing a party to file a second motion for summary judgment is logical, and it fosters the 'just, speedy, and inexpensive' resolutions of suits." *Id.* (quoting Fed. R. Civ. P. 1).

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party meets this burden, the burden then shifts to the opposing party to set forth specific facts showing that a genuine issue remains for trial. *Id.* "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1)).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. Evidence raises a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 252.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "A 'justifiable inference' is not necessarily the most likely inference or the most persuasive inference. Rather, 'an inference as to another material fact may be drawn in favor of the nonmoving party . . . if it is rational or reasonable.'" *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d

1  1539, 1542 (9th Cir. 1989) (quoting *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 631

2  (9th Cir. 1987)).

3  **I.      Successive Motion**

4          The Court finds that the City's successive motion for summary judgment is appropriate under

5  the circumstances to achieve an efficient and final resolution of all claims in this case.[1]  The Court has

6  already ruled against ATC on each of these claims.  Additionally, a trial on each of these claims, when

7  the Court did not find any genuine issues of material fact, would be a waste of the parties' and the

8  Court's resources, if the claims can be resolved without a trial.  Accordingly, the Court considers

9  ATC's three remaining claims under 47 U.S.C. § 332(c)(7): unreasonable discrimination, effective

10  prohibition, and lack of substantial evidence.[2]

11  **II.     TCA — 47 U.S.C. § 332(c)(7)**

12          The TCA affirms local government zoning authority "regarding placement, construction, and

13  modification of personal wireless service facilities."  47 U.S.C. § 332(c)(7)(A).  But that authority is

14  limited. § 332(c)(7)(B).  Specifically, local governments: "shall not unreasonably discriminate among

15  providers of functionally equivalent services," § 332(c)(7)(B)(i)(I); "shall not prohibit or have the

16  effect of prohibiting the provision of personal wireless services," § 332(c)(7)(B)(i)(II); and any

17

18  _____

19          [1]In considering this motion, the Court necessarily grants the City leave to file its successive
    motion after the deadline for filing motions for summary judgment.  However, the Court limits its
20  review to the evidence submitted by the parties in support of the initial motions for summary
    judgment.

21          [2] (A) General authority
    Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority
22  of a State or local government or instrumentality thereof over decisions regarding the
    placement, construction, and modification of personal wireless service facilities.
23  (B) Limitations
    (i) The regulation of the placement, construction, and modification of personal wireless
24  service facilities by any State or local government or instrumentality thereof—
    (I) shall not unreasonably discriminate among providers of functionally equivalent services;
25  and
    (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless
26  services. . . .
    (iii) Any decision by a State or local government or instrumentality thereof to deny a request
27  to place, construct, or modify personal wireless service facilities shall be in writing and
    supported by substantial evidence contained in a written record.

28  47 U.S.C. § 332(c)(7).

07cv399

decision by a local government to deny a request for a personal wireless service facility must be supported by substantial evidence, § 332(c)(7)(B)(iii).

### A.    Substantial Evidence[3]

"[T]he substantial evidence inquiry does not require incorporation of the substantive federal standards imposed by the TCA, but instead requires a determination whether the zoning decision at issue is supported by substantial evidence in the context of applicable *state and local law.*" *MetroPCS, Inc. v. City & Cnty. of S.F.*, 400 F.3d 715, 723–24 (9th Cir. 2005) (emphasis in original). The substantial evidence review is "deferential." *Id.* at 725.  The Court may not "engage in [its] own fact-finding nor supplant the [City's] reasonable determinations." *Id.*  "The upshot is simple: this Court may not overturn the [City's] decision on 'substantial evidence' grounds if that decision is authorized and supported by a reasonable amount of evidence (i.e., more than a 'scintilla' but not necessarily a preponderance)." *Id.*

San Diego Municipal Code § 141.0405 regulates communications towers like the Versus site. The City appropriately considered the 90-foot tower and equipment shelter a major communications facility and evaluated the CUP under those requirements.  In addition to other requirements, "[m]ajor telecommunications facilities shall be designed to be minimally visible through the use of architecture, landscape architecture, and siting solutions, . . . us[ing] the smallest and least visually intrusive antennas and components that meet the requirements of the facility."  S.D.M.C. § 141.0405. Accordingly, the regulations authorize the City to consider the visual impact of the tower, including whether the applicant has used design, architecture, and landscape architecture to minimize its intrusion.

The administrative record reflects that the City found that the tower was the tallest structure in and around the area, resulting in an incongruous effect on the community landscape and that it posed an unsightly visual impact for commuters because it is situated prominently along a major transportation corridor, I-5.  The regulations authorize the City's consideration of these facts in denial

---

[3]The Court considers ATC's substantial evidence claim first because, if a city's "decision fails that test it, of course, is invalid even before the application of the TCA's federal standards." *T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 993 (9th Cir. 2009).

on the CUP application because the City is charged with requiring designs that are minimally visible.

Additionally, it is clear throughout the record that ATC's consistent refusal to modify the proposal to minimize its visibility, including refusal to reduce the height by even the 23 feet of unused tower, weighed against approval of the CUP. This evidence also supports the City's denial of the application because the regulations require designs that are minimally visible. Reviewing the record deferentially, as the Court must, the Court finds that the City's decision was supported by more than a scintilla of evidence. Accordingly, the City is entitled to summary judgment on the substantial evidence claim under § 332(c)(7)(B)(iii).

**B.    Unreasonable Discrimination**

The TCA prohibits "regulation of the placement, construction, and modification of personal wireless service facilities . . . [that] unreasonably discriminate[s] among providers of functionally equivalent services." § 332(c)(7)(B)(i)(I). The only provider ATC claims that the City is differentially treating is the City. To succeed on its unreasonable discrimination claim, ATC must prove that ATC and the City are *functionally equivalent providers* and that the City is *unreasonably discriminating* between the City and ATC. *Id.* (emphasis added).

The parties do not dispute that the City has two towers that are relatively comparable to the Verus tower in terms of size and that the City does not impose its regulations on its own towers. ATC argues that the City's imposition of regulations on ATC that it does not impose upon itself gives the City an unfair competitive advantage against ATC. The City counters that it does not market or advertise its towers in competition with ATC, primarily uses its towers for emergency communications and the general business of the City, and is lawfully exempt from its own land use regulations. The City admits it generates approximately $50,000 from leases to commercial carriers, but this revenue is in sharp contrast to ATC's state rental earnings in excess of one million dollars. ATC counters that the City actually generates approximately $100,000 more from *public* entities co-located on the City's towers.

///
///
///

- 5 -

07cv399

1    Here, ATC and the City are not functionally equivalent providers.  While the evidence

2    presented by the parties does not provide the most comparable information for scrutiny, it is clear that

3    the City's towers are used primarily for City services, including emergency services.  Its minimal

4    leases to other providers, predominately public entities, on these two towers are not comparable to

5    ATC's tower being used entirely for commercial gain with substantially greater revenue.  In reaching

6    this conclusion, the Court is mindful that the City's use of its towers could certainly reach a point

7    where it is more equivalent to ATC, and ATC's concerns that the City is tipping the scales in its favor

8    as a direct competitor might have more traction.  Based on the evidence provided, however, ATC and

9    the City are not functionally equivalent providers.  Accordingly, the City is entitled to summary

10   judgment on its unreasonable discrimination claim under § 332(c)(7)(B)(i)(I).

11       **C.    Effective Prohibition**

12       Under the TCA, local government's regulation of personal wireless facilities cannot "prohibit

13   or have the effect of prohibiting the provision of personal wireless services."  § 332(c)(7)(B)(i)(II).

14   "[A] locality can run afoul of the TCA's 'effective prohibition' clause if it prevents a wireless provider

15   from closing a 'significant gap' in service coverage." *MetroPCS*, 400 F.3d at 731.  To succeed on this

16   claim, ATC must demonstrate a significant gap in service and that the way "it proposes to fill the

17   significant gap in services is *the least intrusive on the values that the denial sought to serve*." *T-

18   Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 995 (9th Cir. 2009) (emphasis in original)

19   (quoting *MetroPCS*, 400 F.3d at 734).

20       Because the Court finds that ATC did not demonstrate that its proposal was the least intrusive

21   means of filling a significant gap in service, assuming there even was a significant gap in service,[4]

22   ATC's effective prohibition claim cannot succeed.  It is ATC's burden to show that its proposal — the

23   existing tower without any reduction in height or alteration in design — was the least intrusive means

24

25 _____

26       [4]The Court notes that the significant gap analysis is particularly challenging in this case because
   what exactly constitutes a significant coverage gap for a tower manager, like ATC, rather than a

27   wireless services provider, like those that lease space from ATC, is not clear in the case law.  The
   significant gap analysis considers whether "a provider is prevented from filling a significant gap in its
   *own* service coverage."   *MetroPCS*, 400 F.3d at 733 (emphasis in original).   Additionally, the

28   "significant gap determination [is an] extremely fact-specific inquir[y] that def[ies] any bright-line
   legal rule." *Id.*

of closing a significant gap in coverage.  *MetroPCS*, 400 F.3d at 734.  This means that ATC "has the burden of showing the lack of available and technologically feasible alternatives."  *T-Mobile*, 572 F.3d at 996 (citing *SprintTelephony PCS, L.P. v. Cnty. of San Diego*, 543 F.3d 571, 579 (9th Cir. 2008) (en banc) ("*Sprint II*")).  This standard is intended to

> allow for *meaningful comparison of alternative sites before the siting application process is needlessly repeated*.  It also gives the providers an incentive to choose the least intrusive site in their first siting applications, and it promises to ultimately identify the best solution for the community, not merely the last one remaining after a series of application denials.

*Id.* at 995 (emphasis added).

It is clear from the record in this case that ATC refused to make any concession with regard to the design or height of its tower and made only minor concessions with regard to landscaping. Throughout the proceedings, despite repeated requests from the City for alternatives and information about coverage gaps with regard to the specific site, ATC refused to provide any re-design options, any analysis of service gaps specific to the Versus site, or any alternative to the existing tower.  ATC essentially told the City that keeping its tower exactly the same, without any alteration to height or design to bring it into greater compliance with the City's regulations, was the best option, without offering any analysis of alternatives.

The facts of this case are drastically different from those of *T-Mobile, USA, Inc. v. City of Anacortes*, where a provider submitted analysis of eighteen alternative sites.  *Id.* at 995.  Here, ATC did not show a "a good faith effort [had] been made to identify and evaluate less intrusive alternatives, *e.g.*, that the provider has considered . . . alternative system designs, alternative tower designs, placement of antennae on existing structures, etc."  *Id.* at 996 n.10 (quoting with approval *APT Pittsburgh Ltd. P'ship v. Penn Twp. Butler Cnty.*, 196 F.3d 469, 480 (3d Cir. 1999).  ATC did not offer any analysis of any alternatives, even analysis of reducing the existing tower by the 23 feet that was going unused without any resulting significant gap in service.  ATC failed to meet its burden to show that its proposal was the least intrusive means of filling a significant coverage gap, assuming there was a coverage gap.  Accordingly, ATC is not entitled to summary judgment on its § 332(c)(7)(B)(i)(II) claim.

///

**CONCLUSION**

The City's successive motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**


DATED:  August 27, 2011

_____
Hon. Roger T. Benitez
United States District Judge

07cv399