# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CELL TOWER LITIGATION | LEAD CASE NO. 07-cv-399 – BEN (WVG)<br>CONSOLIDATED WITH CASE NO. 08-cv-435 – BEN (WVG)<br><br>**ORDER DENYING MOTION FOR AN ORDER TO STAY PORTION OF JUDGMENTS, [Doc. No. 329].** |

This case involves alleged violations of certain portions of the Telecommunications Act of 1996, 47 U.S.C. §§ 251 *et seq.* Plaintiffs American Tower Corporation ("ATC") and T-Mobile West Corporation assert that Defendants City of San Diego, City Council of City of San Diego, and Development Services Department of City of San Diego ("the City") denied them conditional use permits ("CUPs") for wireless communications facilities located at several sites. Currently before the Court is the City's motion "for an order to stay portion of judgments that creates a new rule of California state law pending appeal." [Doc. No. 329.] Having considered the parties' arguments, and for the reasons set forth below, the Court **DENIES** the motion to stay pending appeal.

## BACKGROUND

The background is outlined in the Court's August 5, 2011 and August 26, 2011 orders ruling on the parties' cross-motions for summary judgment. [*See* Doc. Nos. 267, 292.] As relevant to this motion, the Court ruled in the City's favor on all of Plaintiffs' claims except ATC's claims under the Permit Streamlining Act ("PSA"). The Court held that when the public notice regarding the development project is provided by the public entity, and not the applicant, the notice need not inform the public that the project would be deemed approved if the agency failed to act within 60 days.

In its present motion, the City asks the Court to stay enforcement of the above portion of the Court's orders. The City explicitly notes that it will comply with the Court's orders while the appeals in these cases are pending. Indeed, the City has already agreed to issue the permits for the three telecommunication sites at issue in these cases. Rather, as far as the Court can tell, the City appears to seek only the stay of the *precedential effect* of the Court's ruling. The City contends that the Court's ruling is legally erroneous and would result in irreparable injury in the meantime.

## LEGAL STANDARD

A stay pending appeal is directed at the judicial proceedings. *Nken v. Holder*, 556 U.S. 418, 428 (2009). It operates "either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability." *Id.* In determining whether to issue a stay pending appeal, the Court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The party requesting a stay bears the burden of showing that the circumstances justify an exercise of the Court's discretion. *Id.* at 433-34.

## DISCUSSION

### I.   Success on the merits of the appeal

In order to prevail on its motion for a stay pending appeal, the City has to demonstrate "a strong showing that [it] is likely to succeed on the merits" of its appeal. *See id.* at 434. It has failed to do so. The City argues that the Court erred as a matter of law in its analysis of the PSA claim. Specifically, the City disagrees with the Court's analysis of *Bickel v. City of Piedmont*, 16 Cal. 4th 1040 (1997), *superceded by statute on other grounds as recognized in Riverwatch v. County of San Diego*, 76 Cal. App. 4th 1428, 1439 (1999), and *Mahon v. County of San Mateo*, 139 Cal. App. 4th 812 (2006). By the Court's count, this is the City's fifth attempt to re-argue its position. As the Court stated in its order denying the City's motion for reconsideration on this precise issue: "The Court has analyzed this issue and the relevant case law in detail in three prior orders, and need not reiterate that analysis a fourth [now, fifth] time. While the City's briefing of the issue has become more extensive with each

motion raising the issue, its fourth [now, fifth] attempt does not change the Court's analysis or conclusion." (Order Denying the City's Motion for Reconsideration, at 2 [Doc. No. 313].)

In any event, the City's argument boils down to its belief that the Court misapplied (or misread) the California Supreme Court's decision in *Bickel*, 16 Cal. 4th 1040, and that instead it should have applied the California Court of Appeal's decision in *Mahon*, 139 Cal. App. 4th 812. But even setting *Bickel* aside, the City's argument is not persuasive. At issue in this case is Section 65956 of the California Government Code, with provides in pertinent part:

> In the event that a lead agency or a responsible agency fails to act to approve or to disapprove a development project within the time limits required by this article, the failure to act shall be deemed approval of the permit application for the development project. *However, the permit shall be deemed approved only if the public notice required by law has occurred.*

CAL. GOV'T CODE § 65956(b) (emphasis added). Here, the applicable time within which the agency had to approve or disapprove ATC's applications was sixty days after the City's determination that each of the CUP projects was exempt from the California Environmental Quality Act ("CEQA"). *See* CAL. GOV'T CODE § 65950(a)(4). The City does not dispute that it did not grant or deny ATC's CUPs within the required sixty days. Rather, the City argues that its notice to the public did not amount to the "public notice required by law." *See* CAL. GOV'T CODE § 65956(b).

Relying on *Mahon*, the City argues that regardless of who provides the notice, the "public notice required by law" requires that the notice inform the public that the project will be "deemed approved" if not acted upon within sixty days. *See Mahon*, 139 Cal. App. 4th at 821-22. But this reading is contrary to the plain language of the statute. The first step in analyzing a statute is "to scrutinize the actual words of the statute, giving them a plain and commonsense meaning." *Hughes v. Bd. of Architectural Exam'rs*, 17 Cal. 4th 763, 775 (1998) (citation and internal quotation marks omitted). In doing so, the Court "seek[s] to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose." *Id.* (citation and internal quotation marks omitted). As applicable here, the PSA was enacted "[t]o encourage prompt resolution of permit applications." *Mahon*, 139 Cal. App. 4th at 818. To that end, Section 65956 provides that the applicant can compel the public agency to give public notice of the development project or to hold a public hearing, or both. *See* CAL. GOV'T CODE § 65956(a). The statute also provides that where the

public agency has not provided the required public notice, the applicant himself *may* provide the required public notice. *See* CAL. GOV'T CODE § 65956(b). "If the *applicant* chooses to provide public notice, that notice shall include . . . a statement that the project shall be deemed approved if the permitting agency has not acted within 60 days." *Id.* (emphasis added). The statute says nothing about what the public notice must include if it is provided by the public entity as required, instead of the applicant. Under the principle of *expressio unius est exclusio alterius* (the express mention of one thing excludes all others), however, it can be inferred that by expressly providing that the "deemed approved" notice applies "[i]f the applicant chooses to provide public notice," the legislature meant to exclude this requirement from the notice provided by the public agency. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003); *see also I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation and internal quotation marks omitted)). This plain language of the statute should control. *See Hughes*, 17 Cal. 4th at 775 ("'Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction.'" (citation omitted)).

Indeed, it would be contrary to the legislative intent if the public agency could, at is own choosing, delay the resolution of any permit application simply by omitting the "deemed approved" language from the notice provided to the public.[1] *See Mahon*, 139 Cal. App. 4th at 818 (noting that the PSA was enacted "[t]o encourage prompt resolution of permit applications"). Accordingly, the City has failed to demonstrate that it will be successful on the merits of its appeal.

**II.     Irreparable harm**

Neither can the City demonstrate irreparable harm from not having the stay granted. The City is *not* asking the Court to stay the enforcement of the Court's orders. Rather, the City explicitly notes that it will comply with those orders while the appeals are pending, and it has already agreed to issue

---

[1] This further buttresses the Court's reliance on the California Supreme Court's footnote in *Bickel*. *See* 16 Cal. 4th at 1047 n.2 ("Under section 65956, an applicant can compel an agency to give public notice of a development project or to hold a public hearing, or both, and the statute provides a means for the applicant to give public notice. (§ 65956, subds. (a), (b).) Because in this case the city gave public notice and held public hearings, these statutory provisions are not in issue here.").

permits for the three telecommunication sites at issue. Instead, the City contends that as a result of the Court's ruling, numerous permit applicants will seek to take advantage of their applications being "deemed approved" upon the expiration of the requisite time for the agency to act, even where there was no notice issued to the public by the agency that those applications will be "deemed approved" at the expiration of that time. According to the City, it will be irreparably injured by the administrative and financial burden of defending scores of such lawsuits.

The City's argument fails for two reasons. First, as Plaintiffs point out, any harm that will befall the City will be of its own doing. The PSA already requires the agency to act within a certain amount of time. *See* CAL. GOV'T CODE § 65950(a). "In the event that [the agency] fails to act to approve or to disapprove a development project within the [prescribed] time limits . . . , the failure to act shall be deemed approval of the permit application for the development project." CAL. GOV'T CODE § 65956(b). Thus, the City can avoid the potential of future litigation simply by granting or denying the pending applications within the time frames provided by the PSA. Second, to the extent the City argues that it will be required to automatically approve applications even where there was no notice sent to the public that the application will be "deemed approved," the City can easily avoid any such harm by simply including such notice when it provides notice to the public.[2]

As such, because the City can avoid the feared harm by either acting on the applications within the required time constraints or by including the "deemed approved" language in the notices that it sends out, it has failed to show irreparable harm. *See Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 675 (9th Cir. 1988) (noting that the court "must assume that the owners and their employees will not willfully violate criminal assault laws or commit intentional torts against the observer" and holding that plaintiffs could not demonstrate irreparable harm based on the likelihood that they would be subject to an increased risk of liability if their employees assaulted or harassed female observers).

///
///
///

---

[2] Indeed, if the City is correct and the "public notice required by law" requires that the notice provided by the agency indicate that the application will be "deemed approved" after 60 days if the agency fails to act, then the agency is required by law to provide such notice.

## CONCLUSION

The City has failed to demonstrate the two "most critical" factors required to obtain a stay pending appeal: (1) that it will likely succeed on the merits of its appeal; and (2) that it will suffer irreparable harm. *See Nken*, 556 U.S. at 434-35. Accordingly, its motion to stay is **DENIED**.

**IT IS SO ORDERED.**

Date: May 24, 2012

Honorable Roger T. Benitez
United States District Judge